FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 24, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MARY H.,<br><br>    Plaintiff,<br><br> v.<br><br>KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | NO: 1:20-CV-03159-LRS<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

  BEFORE THE COURT are the parties' cross motions for summary judgment. ECF Nos. 21, 24. This matter was submitted for consideration without oral argument. Plaintiff is represented by Attorney Nancy J. Meserow. Defendant is represented by Special Assistant United States Attorney Jeffrey Staples. The Court has reviewed the administrative record, the parties' completed briefing, and is fully informed. For the reasons discussed below, the Court **GRANTS** Plaintiff's Motion for Summary Judgment, ECF No. 21, **DENIES** Defendant's Motion for Summary Judgment, ECF No. 24, and **REMANDS** the case to the Commissioner

ORDER ~ 1

for an immediate award of benefits.

**JURISDICTION**

Plaintiff Mary H.[1] protectively filed an application for Social Security Disability Insurance (DIB) on May 31, 2012, Tr. 81, alleging disability as of May 30, 2001, Tr. 167, due to lupus, a neck injury, and a back injury, Tr. 188. Plaintiff's applications were denied initially, Tr. 104-06, and upon reconsideration, Tr. 112-13.  A hearing before an Administrative Law ("ALJ") was conducted on April 23, 2014.  Tr. 33-80.  Plaintiff was represented by counsel and testified at the hearing.  *Id*.  The ALJ also took the testimony of vocational expert Gary Jesky and Plaintiff's spouse.  *Id*.  The ALJ entered an unfavorable decision on May 13, 2014. Tr. 17-25.  On January 19, 2016, the Appeals Council granted Plaintiff's request for review, but entered an unfavorable decision on February 26, 2016.  Tr. 5-10. The Appeals Council's decision became the final decision of the Commissioner, and Plaintiff requested judicial review by the U.S. District Court in the Western District of Washington.  Tr. 710-13.

The Western District of Washington remanded the case for additional proceedings.  Tr. 728-41.  A second ALJ hearing was held on April 5, 2018.  Tr. 653-80.  Plaintiff was represented by counsel and appeared, but did not testify.  *Id*.

---

[1]In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

ORDER ~ 2

1   The ALJ also took the testimony of medical expert John Kwock, M.D. and
2   vocational expert Richard Hincks.  *Id*.  The ALJ entered an unfavorable decision
3   on July 2, 2018.  Tr. 625-36.  The Appeals Council did not assume jurisdiction in
4   the case under 20 C.F.R. § 404.984(a); therefore, the ALJ's decision became the
5   final decision of the Commissioner.
6       Plaintiff requested judicial review of the July 2, 2018 ALJ decision by the
7   U.S. District Court in the Western District of Washington, and the case was again
8   remanded back the Commissioner for additional proceedings.  Tr. 1697-1710.  A
9   third hearing was held on June 11, 2020, before ALJ Cynthia Rosa.  Tr. 1643-73.
10  Plaintiff was represented and the hearing and provided additional testimony.  *Id*.
11  Plaintiff also took the testimony of vocational Frederick Culter.  *Id*.  The record
12  contains an unsigned ALJ decision finding Plaintiff not eligible for DIB dated June
13  26, 2020.  Tr. 1722-32.  There is no evidence that the Appeals Council assumed
14  jurisdiction under 20 C.F.R. § 404.984(a) and the parties do not challenge the
15  finality of the unsigned decision.  Therefore, the matter is now before this Court
16  pursuant to 42 U.S.C. §§ 405(g).  ECF No. 1.

## BACKGROUND

18      The facts of the case are set forth in the administrative hearing and
19  transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner.
20  Only the most pertinent facts are summarized here.
21      Plaintiff was 42 years old at the alleged onset date.  Tr. 167.  She completed

ORDER ~ 3

the twelfth grade in 1976. Tr. 188. Her reported work history includes jobs as a bartender, mail clerk, and various temp jobs. Tr. 189, 198. Additionally, she reported self-employment in quilting. Tr. 189, 198. At application, she stated that she stopped working on February 14, 2009, because of her conditions. Tr. 188. The date Plaintiff was last insured for DIB purposes was December 31, 2006. Tr. 183.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational

ORDER ~ 4

interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id*. An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that [she] is not only unable to do his previous work[,] but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in

ORDER ~ 5

"substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 404.1520(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §

ORDER ~ 6

404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the

ORDER ~ 7

national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

First, the ALJ found that Plaintiff's date last insured for DIB purposes was December 31, 2006. Tr. 1726.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 1726.

At step two, the ALJ found that Plaintiff had the following severe impairment through the date last insured: cervical degenerative disc disease status post fusion at C7-T11. Tr. 1728.

At step three, the ALJ found that, through the date last insured, Plaintiff did not have an impairment or combination of impairments that meet or medically equaled the severity of a listed impairment. Tr. 1728.

The ALJ then found that, through the date last insured, Plaintiff had the RFC to perform light work as defined in 20 CFR § 404.1567(b) with the following limitations:

> she can frequently climb ramps and stairs, but never ropes, ladders or scaffolds; she can occasionally balance, frequently stoop, kneel, and crouch, but never crawl; she can do occasional overhead reach and frequent reach in all other directions bilaterally; she can frequently finger and handle bilaterally; and should avoid concentrated exposure to vibration and hazards.

Tr. 1728.

ORDER ~ 8

At step four, the ALJ identified Plaintiff's past relevant work as a bartender, a waitress, an automobile rental clerk, a quilter, a mail room clerk, and a barista and found that she was not able to perform any past relevant work. Tr. 1730-31.

At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there were other jobs that exist in significant numbers in the national economy that Plaintiff could perform through the date last insured, including office helper, outside deliverer, cafeteria attendant, and small products assembler. Tr. 1731-32. The ALJ found that Plaintiff was not under a disability within in the meaning of the Social Security Act any time through the date last insured. Tr. 1732.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her DIB under Title II. ECF No. 21. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly addressed the opinions from Darrell C. Brett, M.D.; and

2. Whether the ALJ properly addressed Plaintiff's symptom statements.

## DISCUSSION

**1.    Darrell C. Brett, M.D.**

Plaintiff challenges the ALJ's treatment of the eight opinions from Darrell C. Brett, M.D. ECF No. 21 at 2-12.

ORDER ~ 9

On October 18, 2001, Dr. Brett stated that following a work injury on May 30, 2001, Plaintiff had failed to respond to protracted conservative measures and "is quite disabled with her pain. She is to remain off work at this time and continue her medications." Tr. 295.

On November 13, 2001, Dr. Brett stated that Plaintiff "can return to light work effective 12-1-01 provided she not be required to lift or carry more than 25 lbs., perform any repetitive or heavy exertion with the upper extremities , or maintain any awkward or stationary neck positions." Tr. 288, 331.

On May 13, 2002, Dr. Brett stated that Plaintiff "can be working provided she not be required to lift or carry more than 10 lbs., perform any repetitive or heavy exertion with the upper extremities, or maintain any awkward or stationary neck positions. I suspect these will be permanent work restrictions and constitute a moderate permanent partial disability in this regard." Tr. 286, 331.

On April 17, 2003, Dr. Brett stated that Plaintiff "continues to be released for work with her permanent light-duty restrictions in that she should not lift or carry more than 10 lbs., perform any repetitive or heavy exertion with the upper extremities, or maintain any awkward or stationary neck positions." Tr. 286.

On January 26, 2005, Dr. Brett stated that Plaintiff "should remain off work until 3-1-05 when she can return to light work provided she not lift or carry more than 25 lbs., perform any repetitive or heavy exertion with the upper extremities, or maintain any awkward or stationary neck positions." Tr. 285, 330.

ORDER ~ 10

On March 31, 2005, Dr. Brett stated that Plaintiff "can return to light work provided she not lift or carry more than 25 lbs., perform any repetitive or heavy exertion with the upper extremities, or maintain any awkward or stationary neck positions that aggravate her pain." Tr. 292, 330.

On June 1, 2005, Dr. Brett stated that Plaintiff was "considered medically stationary with a moderate permanent partial disability in that she should not lift or carry more than 25 lbs., perform any repetitive or heavy exertion with the upper extremities, or maintain any awkward or stationary neck positions that aggravate her pain." Tr. 282, 329.

On April 27, 2020, Dr. Brett provided a medical source statement in an attempt to clarify his prior medical opinions. Tr. 1848-51. In the document, he stated the following:

> All my opinions reflect her limitation regarding repetitive or heavy exertion with the upper extremities or maintaining any awkward or stationary neck position that increased her pain. While her symptoms might have varied from day to day, by 12/31/06, this limitation would have precluded use of her arms or holding her head in a static position for more than approximately 30-60 minutes on a sustained basis, and she would have then needed to take a 15-30 minute rest break to lie down to relieve her symptoms before she could resume activity with her arms/hands or hold her neck in a static position again. In an 8-hour workday, I would estimate that she would have needed rest breaks totally between 2-4 hours a day. Simply put, the more she used her arms and hands, or held her neck in a static position, the more her pain increased and the more rest breaks she would have needed. In my opinion, she could not have worked a routine 40-hour workweek and she likely would have been absent at least several days a month. Her functioning today is even further eroded.

Tr. 1851.

ORDER ~ 11

The ALJ rejected Dr. Brett's 2020 opinion, gave great weight to Dr. Brett's multiple opinions that Plaintiff could not lift over 25 pounds, and rejected Dr. Brett's opinion that Plaintiff could not lift over ten pounds. Tr. 1729-30.

When addressing medical opinions, such as those from Dr. Brett, the Ninth Circuit has recognized that there are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a reviewing physician's opinion. *Id*. Here, Dr. Brett is a treating physician as he saw Plaintiff for years following her on-the-job injury in May of 2001.

The Ninth Circuit has further found that if a treating physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). Conversely, if a treating doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing "specific and legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)). The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough

ORDER ~ 12

summary of the facts and conflicting clinical evidence, stating her interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ is required to do more than offer her conclusions, she "must set forth [her] interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).[2]

Here, the ALJ failed to prove legally sufficient reasons for rejecting Dr. Brett's 2020 opinion. In her decision, the ALJ provided the following rationale for rejecting the opinion:

> It is unlikely that his recollection of a patient's condition 14 years ago is more accurate now than it was when it was rendered. Furthermore, his 2020 statements about her condition 14 years ago are likely to have been influenced by the deterioration of the claimant's condition in the intervening 14 years. His current opinion is probably accurate for the current time, but this period is not at issue. For these reasons, more weight is given to his opinions issued closer to the date last insured, between 2001 and 2005.

Tr. 1729.

First, by rejecting the 2020 opinion and giving weight to the opinions between 2001 and 2005, the ALJ implies that the 2020 statement by Dr. Brett is inconsistent with his previous opinions. However, there are no inconsistencies.

---

[2]Because this case was filed prior to March 27, 2017, the new Regulations regarding the treatment of medical opinions do not apply. *See* 20 C.F.R. §§ 404.1520c, 404.1527.

ORDER ~ 13

Dr. Brett's opinions between 2001 and 2005 did not address Plaintiff's ability to sustain work activity.  The Court acknowledges that Dr. Brett opined Plaintiff could return to work with exertional and manipulative limitations in 2001 and 2005.  However, Dr. Brett was providing an opinion premised on the rules associated with Alaska's Worker's Compensation scheme, Tr. 282 (Letter to Fireman's Fund), and not associated with Social Security's definition of work, *See* S.S.R. 96-8p (The Commissioner defines the ability to work as on a "regular and continuing basis" which means eight hours a day, for five days a week, or an equivalent work schedule.).  Therefore, stating that Plaintiff can return to work with limitations does not presumptively mean that Plaintiff can return to full-time work.  As such, Dr. Brett's 2020 opinion that Plaintiff could not sustain a routine 40-hour workweek is not inconsistent with the earlier opinions.  Here, the ALJ failed to specifically explain why Dr. Brett's 2020 statements regarding Plaintiff's ability to sustain work activity was not adopted as part of the RFC determination.  Social Security Ruling (S.S.R.) 96-8p states that the residual functional capacity assessment "must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."  Therefore, the ALJ erred by failing to explain why she rejected Dr. Brett's 2020 opinion regarding Plaintiff's ability to sustain work activity.

Second, the fact that the opinion was rendered remotely, absent evidence

ORDER ~ 14

that Plaintiff's condition worsened, is of little consequence. *Tobeler v. Colvin*, 749 F.3d 830, 833 (9th Cir. 2014). The ALJ assumed that Plaintiff's condition worsened, but failed to point to any evidence in the record supporting this assumption. Tr. 1729 ("his 2020 statements about her condition 14 years ago are likely to have been included by the deterioration of the claimant's condition in the intervening 14 years. His current opinion is probably accurate for the current time, but this period is not at issue.") . Therefore, the reason the ALJ provided for rejecting the opinion fails to meet the specific and legitimate standard.

Third, when the ALJ transferred the manipulative limitations consistently opined by Dr. Brett, that Plaintiff was precluded from "repetitive exertion," she characterized it as "repetitive lifting." *See* Tr. 1729 ("Dr. Brett's opinion that the claimant could do no lifting over 25 pounds, which is consistent with the residual functional capacity adopted herein, including light exertion work, with no repetitive or heavy upper extremity lifting."). However, "repetitive exertion" is not equivalent to "repetitive lifting." This is further demonstrated by Dr. Brett's 2020 clarifying opinion that Plaintiff was precluded from using her arms for more than approximately thirty to sixty minutes on a sustained basis before requiring a break. Tr. 1851. While this manipulative limitation opined by Dr. Brett arguably falls within the definition of frequent, which was included in the ALJ's RFC determination, *See* POMS DI 25001.001 (frequently is defined as occurring one-third to two-thirds of an eight-hour day), the specific limitation of upper extremity

ORDER ~ 15

use limited to an hour or less at one time was not presented to the vocational expert. This specific limitation may have resulted in a different step five determination as potentially inconsistent with jobs like small products assembler.

Here, the ALJ erred in her treatment of Dr. Brett's opinions. The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome[.]" *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990); *see also Garrison v. Colvin*, 759 F.3d 995, 1021 (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met). This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401.

Here, the period at issue is limited to May 30, 2001 through December 31, 2006. Therefore, the record appears to be fully developed as no evidence appears to be outstanding. This is the third time this case has been before a U.S. District Court. The record demonstrates that if Dr. Brett's opinion regarding Plaintiff's ability to sustain work activity, i.e. needing additional breaks throughout the day, were credited as true, it would result in an RFC determination that is inconsistent

ORDER ~ 16

with Social Security's definition of work.  Testimony from a vocational expert at the last hearing confirmed that someone needing breaks at the rate opined by Dr. Brett would not be capable of maintaining competitive employment.  Tr. 1667 ("That would be an excessive amount of absenteeism from the job or being off task so that the productivity or the inconvenience to the floor of work would become problematic in almost all environments.").  Therefore, a remand for an immediate award of benefits is appropriate.

**2.     Plaintiff's Symptom Statements**

Plaintiff argues that the ALJ erred in the treatment of her symptom statements.  ECF No. 21 at 17-25.  However, since it is appropriate to remand the case for an immediate award of benefits based on Dr. Brett's multiple consistent opinions, there is no need to address the ALJ's treatment of Plaintiff's symptom statements in detail.

**CONCLUSION**

Remand for an immediate award of benefits is appropriate in this case.  Upon remand, the Commissioner will calculate Plaintiff's DIB benefits based on a finding of disability at step five as of the date of Plaintiff's alleged onset date, May 30, 2001.  The Court notes that Plaintiff filed for Supplemental Security Income (SSI) subsequent to her date last insured.  Tr. 717, 1734.  The SSI application was ultimately denied due to Plaintiff's failure to cooperate.  Tr. 1734.  The Court highlights that this Order is limited to the DIB application, and any question

ORDER ~ 17

regarding the SSI application was not before this Court.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 21, is **GRANTED,** and the matter is **REMANDED** to the Commissioner for an immediate award of benefits.

2. Defendant's Motion for Summary Judgment, ECF No. 24, is **DENIED**.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel, enter judgment in favor of the **Plaintiff**, and **CLOSE** the file.

**DATED** January 24, 2022.

_____
LONNY R. SUKO
Senior United States District Judge

ORDER ~ 18